# ÆTNA LIFE INSURANCE COMPANY v. MIDDLE-PORT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Submitted January 4, 1888. — Decided February 6, 1888.

The town of Middleport having, in pursuance of a statute of Illinois, voted an appropriation to the Chicago, Danville and Vincennes Railroad Company, to be raised by a tax on the property of the inhabitants of the town, issued bonds, payable with interest to bearer, for a sum. large enough to include interest and the discount for which they could be sold, and delivered them to the railroad company, and they were accepted by that company, and sold and delivered to plaintiff. *Held :*

(1) That the purchase of these bonds by plaintiff was no payment of the appropriation voted by the town to the railroad company.

(2) That, the bonds having been held to be void in a suit between the plaintiff and the town, this did not operate as a subrogation of the plaintiff to the right of the company, if any such existed, to enforce the collection of the appropriation voted by the town.

(3) The doctrine of subrogation in equity requires, 1, that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and, 2, that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another.

THIS was an appeal from a decree of the Circuit Court of the United States for the Northern District of Illinois, dismissing on demurrer the bill of the Ætna Life Insurance Company, the present appellant.

The substance of the bill was that the complainant is the owner of fifteen bonds, of one thousand dollars each, issued by the township of Middleport, in the State of Illinois, dated February 20, 1871, and delivered to the Chicago, Danville and Vincennes Railroad Company. These bonds were payable to bearer, and were bought of the railroad company by the complainant, who paid value for them.

The bill recited that this railroad company was incorporated in 1865 under the laws of the State of Illinois, with power to construct a railroad from a point in Lawrence County, by way of Danville, to the city of Chicago; that an act of the legislature of that State, passed March 7, 1867, authorized cities, towns, or townships, lying within certain limits, to appropriate moneys and levy a tax to aid the construction of said road; and "that said act authorized all incorporated towns and cities and towns acting under township organization, lying wholly or in part within twenty miles of the east line of the State of Illinois, and also between the city of Chicago and the southern boundary of Lawrence County, in said State, to appropriate such sums of money as they should deem proper to the said Chicago, Danville and Vincennes Railroad Company, to aid it in the construction of its road, to be paid as soon as the track of said road should be laid and constructed through such cities, towns, or townships: Provided, however, that a proposition to make such appropriation should first be submitted to a vote of the legal voters of such cities, towns, or townships at a regular, annual, or special meeting, of which at least ten days' previous notice should be given; and also provided, that a vote should be taken on such proposition, by ballot, at the usual place of election, and that a majority of the votes cast should be in favor of the proposition; and your orator further avers that said act authorized and required the authorities of such cities, towns, and townships to levy and collect such taxes and to make such other provisions as might be necessary and proper for the prompt payment of such appropriations so made."

It was then alleged, that, on the 8th day of June, 1867, after due publication of notice according to law, a meeting of the legal voters of said town of Middleport was held, at which they cast their votes by ballot upon the proposition to levy and collect a tax of $15,000 upon the taxable property of the inhabitants of the town to aid in the construction of said railroad, provided Watseka, a city in the county of Iroquois, situated in or near the south line of said town, should be made a point in said road; that it appeared, on counting the votes,

that 323 were in favor of and 68 were against such tax, and that thereupon the proposition was duly declared carried, the proceedings relating to the meeting and vote duly attested by the town clerk and the moderator of the meeting, and by said clerk duly recorded in the town records.

.. The bill further averred that the railroad company accepted this vote and appropriation of the township, and, relying upon such vote and the good faith of said town, accepted the condition of the appropriation, and constructed and completed its track through said town; that on the 10th day of February, 1871, the board of town auditors adopted a resolution, of which the following is a copy:

"Whereas the township of Middleport did, on the 8th day of June, 1867, vote aid to the Chicago, Danville & Vincennes Railroad Company to the amount of fifteen thousand dollars, and it appearing that said township is unable to pay such amount in money:

"Therefore resolved by the board of auditors of said township that bonds issue to said Chicago, Danville & Vincennes Railroad Company to the amount of fifteen thousand dollars, together with a sufficient amount to cover the discount necessary on said bonds in negotiating the same, to wit, one thousand five hundred dollars, said bonds to be dated February 20th, A.D. 1871, and to bear interest at the rate of ten per cent from date per annum."

In pursuance of this resolution it was alleged, that, on the 24th day of March, 1871, the supervisor and town clerk of Middleport executed the fifteen bonds which are the subject of this suit; that "the said bonds were numbered one to fifteen, inclusive, and were delivered to the said railroad company, upon the fulfilment of the conditions of said vote, in payment of ninety cents on the dollar of the appropriation made to said company by said vote, both parties believing that said bonds were fully authorized by law and were legal, valid, and binding on said town, and also believing them to be legal evidences of the debt in favor of said company incurred by said town in voting said appropriation."

It was then alleged, that, on or about the 26th day of June,

1876, the town of Middleport, which up to that time had paid the interest upon the bonds, filed a bill in equity in the Circuit Court for the county of Iroquois against the complainant corporation as the holder of said bonds, and certain other persons, "alleging, in substance, the making and issuing of said bonds, as herein stated, that the same were delivered to your orator, and that your orator was the holder thereof, and that the same were made and issued without authority of law and were invalid, and praying the court so to decree and to enjoin your orator from collecting the same and for other relief, as by the record in the cause, upon reference thereto, will fully appear."

It was averred that the Circuit Court dismissed the bill, but that upon appeal to the Supreme Court of Illinois the decree dismissing it was reversed, that court holding that these bonds were void as issued without authority of law; and the case was remanded to said Circuit Court for further proceedings; whereupon it passed a decree in conformity with the opinion of said Supreme Court, adjudging the bonds void, and enjoined their collection.

The bill then charged that said Supreme Court, while holding the bonds to be void, did not deny, but impliedly admitted, the validity of the appropriation by the town, and insisted that by the issue and delivery of said bonds to the railroad company, and their sale by that company to the present complainant, it was thereby subrogated to the rights of action which that company would have on the contract evidenced by the vote of the town, and the acceptance and fulfilment of the contract by the railroad company. It was also alleged that no part of the principal sum named in the bonds, or any part of said appropriation, had ever been paid, but that, on the contrary, the town of Middleport denied all liability therefor; that ever since the purchase of said bonds the complainant had continued to hold, and then held, the same, and had been and then was the holder of all rights which the railroad company or its assigns had against said town by reason of the premises.

A decree was then prayed for that the town of Middleport should pay to complainant the amount found due, and should

without delay levy and collect all taxes necessary for such pay-
ment; also, that the court would enforce the rights of com-
plainant by writs of mandamus, and such other and further
orders and decrees according to the course of equity as should
be necessary and proper; and also prayed that W. H. Leyford,
in whose hands as receiver the Chicago, Danville & Vincennes
Railroad Company had been placed by the court, it being in-
solvent, might be made a party defendant thereto.

To this bill the defendant demurred, and assigned the fol-
lowing as causes for demurrer:

First. That said bill does not contain any matter of equity
whereon this court can ground any decree or give complainant
any relief as against this respondent.

Second. Bill shows it is exhibited against respondent and
the Chicago, Danville and Vincennes Railroad Company and
William Leyford, its receiver, as respondents thereto, and the
facts set forth therein show the same relief cannot be granted
against all of said respondents, and fails to state facts showing
respondents jointly liable, but stated facts which show this
respondent, if liable at all, is not jointly liable or in any
manner connected with the others, and the bill is multifari-
ous.

Third. Fails to show any written agreement on which suit
is brought that would bind respondent, and fails to state facts
showing a cause of action exists against respondent that arose
within five years last past before bringing of suit.

Fourth. Fails to show any written agreement on which
suit is brought binding on respondent on which has arisen a
cause of action within the last ten years prior to bringing this
suit.

Fifth. Fails to set forth facts showing an excuse for the
great delay in bringing suit which is shown on face of bill, and
equity will not relieve against laches.

Sixth. Bill contains many blanks of dates and names and
nothing on face of bill from which facts can be obtained to fill
same.

The court below sustained the demurrer, and dismissed the
bill, from which judgment complainant appealed.

*Mr. J. H. Sedgwick* and *Mr. O. J. Bailey* for appellant.

I. The contracts granting aid were completed, as binding obligations on the towns in favor of the railroad company, at the polls. *Chinquy* v. *People*, 78 Illinois, 570, 576; *Chicago & Iowa Railroad Co.* v. *Pinkney*, 74 Illinois, 277; *Fairfield* v. *Gallatin County*, 100 U. S. 47; overruling *Concord* v. *Savings Bank*, 92 U. S. 625. The fact that there were conditions in the contract, as that the railroad should be built, &c., made it no less binding. The railroad company performed the conditions about July, 1871. This made the contracts absolute on the part of the town to levy, collect and pay over to the railroad company the taxes voted. These contracts have never been changed. "The constitution (of Illinois, 1870) saved whatever rights were acquired by the company under that vote; for it left untouched the authority of the township to complete the donation to the company according to the terms upon which it was voted." *Concord* v. *Robinson*, 121 U. S. 165, 171.

The issuing of void bonds by the officers of the town to represent or fund these contracts, and the acceptance of such bonds by the railroad company, and its negotiation of them to holders for value, did not extinguish these valid obligations of the towns. *Marsh* v. *Fulton County*, 10 Wall. 676; *Louisiana* v. *Wood*, 102 U. S. 294; *Paul* v. *Kenosha*, 22 Wisconsin, 256; *S. C.* 94 Am. Dec. 598; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Nelson* v. *Mayor*, 63 N. Y. 535, 544; *Anthony* v. *Jasper Co.*, 101 U. S. 693. But having sold the bonds and received the money on them it would be inequitable for the railroad company to still enforce the contracts for its own benefit. It therefore holds them as trustee for our benefit. By buying the bonds supposed to represent them we became in equity entitled to the benefit of them. *Louisiana* v. *Wood*, 102 U. S. 294, 298.

A purchaser will ordinarily be subrogated to all the rights of his vendor in the property, even though they are not expressly conveyed to him. Sheldon on Subrogation, § 34.

II. The *equitable assignee* of a *chose in action* has the right to go into a court of equity to have his interest therein estab-

lished; and when so·established he will have the right to complete relief in the same action by decree of specific performance of the contract. *Mechanics Bank of Alexandria* v. *Seton*, 1 Pet. 299; *Fortiscue* v. *Barnett*, 3 Myl. & K. 36; *Ex parte Pye*, 18 Ves. 140. In enforcing specific performance the Supreme Court of the United States regards the technical distinction, as to whether the contract relates to realty or personalty, much less than it does the other question; whether the plaintiff is entitled to other or better relief than the law can give him. *Mechanics Bank of Alexandria* v. *Seton, supra.*

Our remedy at·law to be subrogated to the rights of the railroad company on these contracts with the towns, is very far from being clear and perfect. The practice in Illinois, which in this case, being the ancient practice, is authority for our procedure, requires us to go into equity for subrogation. Courts of law there know nothing of this relief and cannot administer it. *Meyer* v. *Mintonye*, 106 Ill. 414. This is the general rule wherever the jurisdictions are separate. *Springer's Admr.* v. *Springer*, 43 Penn. St. 518; *Mosier's Appeal*, 56 Penn. St. 76; *Eaton* v. *Hasty*, 6 Nebraska, 419.

Even in those States where the law, following equity, has come to administer this relief more or less completely it appears that equity still retains its jurisdiction. Sheldon on Subrogation, ch. 1, §§ 1, 4. Indeed it is the rule that a United States court of equity will not be ousted of its ancient jurisdiction because the state courts of law come to apply equity principles more or less thoroughly. *Payne* v. *Hook*, 7 Wall. 425; *Borer* v. *Chapman*, 119 U. S. 587.

The cases at bar then belong to that class where the plaintiff has an independent equity, the right to·subrogation. If the action had been by the railroad company against the towns on their contracts, it must have been at law, of course. But we have no *legal* title to those contracts. They never have·been assigned to us. Had they been perhaps we might have brought an action at law on them against the towns in the name of the railroad company, or its receiver; though this is doubtful. But clearly now our remedy to get the benefit of those contracts is wholly and purely equitable.

Had these *choses in action* been actually assigned to us by the railroad company, our right to them would have rested in such contract of assignment. Now it rests on the *fact* that we bought certain bonds, supposed at the time to represent these contracts, but which afterwards turned out void. The equity of subrogation arises where plaintiff's right rests not upon contract, but upon a state of facts which give it. In such cases the proper remedy is not at law but in equity. *Mosier's Appeal*, 56 Penn. St. 76; *Eaton v. Hasty*, 6 Nebraska, 419.

We stand like a purchaser of land at execution sale which has turned out invalid. Such facts subrogate the purchaser to the lien of the original judgment. *McHany v. Schenk*, 88 Illinois, 357.

III. But we are told that we have no right to this subrogation because in buying the bonds we made a mistake not of fact but of law, and are therefore chargeable with notice of the invalidity of the bonds. But how does this affect our right to subrogation? " Circumstances may exist which will give the holder of bonds an equitable right to recover from the municipality the money which they represent, though he cannot enforce their payment or put them on the market as commercial paper." *Anthony v. County of Jasper*, 101 U. S. 693, 697.

This was said in a case where the bonds were held void because issued by a fraud which amounted to forgery, and the purchaser was held chargeable with notice of the fraud. If we were suing the railroad company on an implied warranty of the validity of the bonds, this question of implied notice of their invalidity might cut some figure. But in equity, notwithstanding the notice of *caveat emptor* under which he purchased, a purchaser is subrogated to the lien of the original judgment. So implied notice of defects in the thing purchased has nothing to do with the purchaser's right to be subrogated to all that fairly and equitably should go with his purchase to recompense him, if it turns out a nullity. And whether the mistake of the purchaser is one of law or fact, he has the right to be subrogated to everything that equitably belongs with

his purchase. *Gause* v. *Clarksville*, 5 Dillon, 165, 180; *Wood* v. *Louisiana*, 5 Dillon, 122, 124; *Shirk* v. *Pulaski County*, 4 Dillon, 209, 214; *School District* v. *Lombard*, 2 Dillon, 493. In *Louisiana* v. *Wood*, *supra*, it is settled that the purchaser of void bonds, though chargeable with notice of their invalidity, is subrogated to the seller's rights on the consideration for which they were issued against the municipality issuing them.

But further: Whether the bonds were valid or not was, at the time of the purchase, a mixed question of law and fact. The question as to whether these officers had in fact, if necessary under the law, been expressly authorized by the voters to issue the bonds, was a question of fact. The people having voted the aid, the supervisors being the proper officers to decide whether the requirements authorizing the issue of bonds had been complied with (see *People* v. *Cline*, 63 Illinois, 394), and they issuing bonds reciting as these do that they were issued in accordance with the acts of the legislature and the vote of the electors of the towns, we had the right to assume that all facts necessary to give the supervisors authority to issue the bonds had been complied with. *Pompton* v. *Cooper Union*, 101 U. S. 196.

The towns cannot complain that we are subrogated to the rights of the railroad company under these contracts; for we must bear in mind that in this case the liability of the town was *fixed* by the election, as held in *Chinquy* v. *People*, and *Fairfield* v. *Gallatin Co.*, *supra*. It is liable to somebody, either the railroad company or to us as the equitable assignee or successor of that company. It makes no difference to the town to which it is liable. We bring it and the company into a court of equity asking to have the liability declared and established in us by subrogation. If the railroad company makes no objection to this, certainly the town cannot demur.

IV. There is no multifariousness in the relief asked. It can all be granted in one decree. A decree subrogating us to the railroad company's rights under its contracts with the towns and ordering the towns to perform that contract for our benefit, is certainly a very simple matter.

V. But defendant's counsel tell us that we are now barred

from our equity because we did not set it up in the former case, the one finally disposed of by the decision of the Illinois Supreme Court in *Middleport* v. *Ætna Life Ins. Co.*, 82 Illinois, 562. In answer to this it is sufficient to say: 1st: We did not know at that time that we had any such equity; we could not know about that until the final decision of that case, supposing as we did all through the case that the bonds were valid. 2d. We could not have set up this equity in that suit even had we mistrusted that we possessed it, for that was a bill by the town to invalidate the *bonds* because irregularly issued.

VI. But defendant's counsel tell us that though our equity were valid and not barred by failure to set it up in the former case, *Middleport* v. *Ætna Ins. Co.*, yet it is now stale and barred by the statute of limitations. It is not stale unless it is barred by the statute. Mere delay alone short of the period fixed as a bar by the statute of limitations will not preclude the assertion of an equitable right. It is only when by delay and neglect to assert a right that the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done in reference to the matter, had the right been promptly asserted, that the defence of *laches* can be considered. *Gibbons* v. *Hoag*, 95 Illinois, 45, 69; *Thompson* v. *Scott*, 1 Bradwell, App. Ill. 641; *Hubbard* v. *United States Mortgage Co.*, 14 Bradwell, App. Ill. 40; *United States* v. *Alexandria*, 19 Fed. Rep. 609; *S. C.* 4 Hughes, 545. Here there can be no pretence that our delay to sue has wrought an injury to defendants.

As to the question of limitation raised, it must be decided upon the law in force at the time *when the contract was made;* even though a new limitation law were enacted before suit could be brought. *Means* v. *Harrison*, 114 Illinois, 248; *Mc-Millan* v. *McCormick*, 117 Illinois, 79.

[Counsel then examined the statutes at length, contending that they did not bar the action, and that there had been no laches.]

*Mr. Francis Fellowes* also filed an argument for appellant.

*Mr. Robert Doyle* for appellee.

MR. JUSTICE MILLER, after stating the case as above reported, delivered the opinion of the court.

In the argument of the demurrer before the Circuit Court several objections to the bill were taken. The defendant in error,¹ however, relies here upon three principal grounds of defence: *First*, it denies the right of subrogation, upon which rests the whole case of the complainant; *second*, it relies upon the statute of limitations of five years; and *third*, it asserts that the former decree in the state court is a bar to the action here.

The Circuit Court held that the statute of limitations was a bar to the present suit, and dismissed the bill on that ground.

But we regard the primary question, whether the complainant is entitled to be substituted to the rights of the railroad company after buying the bonds of the township, a much more important question, and are unanimously of opinion that the transaction does not authorize such subrogation.

The bonds in question in this suit were delivered by the agents of the town of Middleport to the railroad company, and by that company sold in open market as negotiable instruments to the complainant in this action. There was no indorsement, nor is there any allegation in the bill that there was any express agreement that the sale of these bonds carried with them any obligation which the company might have had to enforce the appropriation voted by the town. Notwithstanding the averment in the bill that the intent of complainant in purchasing said bonds, and paying its money therefor, was to acquire such rights of subrogation, it cannot be received as any sufficient allegation that there was a valid contract to that effect. On the contrary, the bill fairly presents the idea that by reason of the facts of the sale the complainant was in equity subrogated to said rights, and entitled to enforce the same against the town of Middleport.

The argument of the learned counsel in the case is based entirely upon the right of the complainant to be subrogated

to the rights of the railroad company by virtue of the principles of equity and justice. He does not set up any claim of an express contract for such subrogation. He says:

"The equity alleged in the plaintiff's bill is, as I have said, the equity of subrogation. Before proceeding to call the attention of the court to the facts from which this equity arises, it may be useful to advert to the instances in which the right of subrogation exists, and to the principles on which it rests."

He founds his argument entirely upon the proposition, that when the complainant purchased these bonds he thereby paid the debt of the town of Middleport to the railroad company, as voted by it, and that because it paid this money to that company on bonds which are void, it should be subrogated to the right of the company against the town.

The authorities on which he relies are all cases in which the party subrogated has actually paid a debt of one party due to another, and claims the right to any security which the payee in that transaction had against the original debtor. But there is no payment in the case before us of any debt of the town. The purpose of the purchase, as well as the sale of these bonds, and what the parties supposed they had effected by it, was not the payment of that debt, but the sale and transfer of a debt of the town from one party to another, which debt was evidenced by the bonds that were thus transferred. Neither party had any idea of extinguishing by this transaction the debt of the town. It was very clear that it was a debt yet to be paid, and the discount and interest on the bonds was the consideration which induced the complainant to buy them.

The language of this court in *Otis et al.* v. *Cullum, Receiver,* 92 U. S. 447, is very apt, and expresses precisely what was done in this case. In that case Otis & Company were the purchasers of bonds of the city of Topeka from the First National Bank of that place. These bonds were afterwards held by this court to be void for want of authority, just as in the case before us. A suit was brought against the bank, which had failed and was in the hands of a receiver, to recover back the money paid to it for the bonds. After referring to the decis-

ion of *Lambert* v. *Heath*, 15 Meeson & Welsby, 486, this court said:

"Here, also, the plaintiffs in error got exactly what they intended to buy, and did buy. They took no guaranty. They are seeking to recover, as it were, upon one, while none exists. They are not clothed with the rights which such a stipulation would have given them. Not having taken it, they cannot have the benefit of it. The bank cannot be charged with a liability which it did not assume. Such securities throng the channels of commerce, which they are made to seek, and where they find their market. They pass from hand to hand like bank notes. The seller is liable *ex delicto* for bad faith; and *ex contractu* there is an implied warranty on his part that they belong to him, and that they are not forgeries. Where there is no express stipulation, there is no liability beyond this. If the buyer desires special protection, he must take a guaranty. He can dictate its terms, and refuse to buy unless it be given. If not taken, he cannot occupy the vantage ground upon which it would have placed him." p. 449.

Nor can this case be sustained upon the principle laid down in this court in *Louisiana* v. *Wood*, 102 U. S. 294. That was a case in which the city of Louisiana, having a right by its charter to borrow money, had issued bonds and placed them on the market for that purpose. These bonds were negotiated by the agents of the city, and the money received for their sale went directly into its treasury. It was afterwards held that they were invalid for want of being registered. Afterwards the parties who had bought these bonds brought suit against the city for the sum they had paid, on the ground that the city had received their money without any consideration, and was bound *ex æquo et bono* to pay it back. The court said:

"The only contract actually entered into is the one the law implies from what was done, to wit, that the city would, on demand, return the money paid to it by mistake, and, as the money was got under a form of obligation which was apparently good, that interest should be paid at the legal rate from the time the obligation was denied."

In the present case there was no borrowing of money.

There was nothing which pretended to take that form. No money of the complainants ever went into the treasury of the town of Middleport; that municipality never received any money in that transaction. It did not sell the bonds, either to complainant or anybody else. It simply delivered bonds, which it had no authority to issue, to the railroad company, and that corporation accepted them in satisfaction of the donation by way of taxation which had been voted in aid of the construction of its road.

The whole transaction of the execution and delivery of these bonds was utterly void, because there was no authority in the town to borrow money or to execute bonds for the payment of the sum voted to the railroad company. They conferred no right upon anybody, and of course the transaction by which they were passed by that company to complainant could create no obligation, legal or implied, on the part of the town to pay that sum to any holder of these bonds.

*Litchfield* v. *Ballou*, 114 U. S. 190, sustains this view of the subject. That town had issued bonds for the purpose of aiding in the construction of a system of water-works. In that case, as in *Louisiana* v. *Wood*, the bonds were so far in excess of the authority of the town to create a debt that they were held by this court to be void in the case of *Buchanan* v. *Litchfield*, 102 U. S. 278. After this decision, Ballou, another holder of the bonds, brought a suit in equity upon the ground that, though the bonds were void, the town was liable to him for the money which he had paid in their purchase. This court held that there was no equity in the bill on the ground that, if the plaintiff had any right of action against the city for money had and received, it was an action at law, and equity had no jurisdiction. It was also attempted in that case to establish the proposition, that, the money of the plaintiffs having been used in the construction of the water-works, there was an equitable lien in favor of the plaintiffs on those works for the sum advanced. This was also denied by the court.

One of the principles lying at the foundation of subrogation in equity, in addition to the one already stated, that the person seeking this subrogation must have paid the debt, is that he

must have done this under some necessity, to save himself from loss which might arise or accrue to him by the enforcement of the debt in the hands of the original creditor; that, being forced under such circumstances to pay off the debt of a creditor who had some superior lien or right to his own, he could, for that reason, be subrogated to such rights as the creditor, whose debt he had paid, had against the original debtor. As we have already said, the plaintiff in this case paid no debt. It bought certain bonds of the railroad company at such discount as was agreed upon between the parties, and took them for the money agreed to be paid therefor.

But even if the case here could be supposed to come within the rule which requires the *payment* of a debt in order that a party may be subrogated to the rights of the person to whom the debt was paid, the payment in this case was a voluntary interference of the Ætna Company in the transaction. It had no claim against the town of Middleport. It had no interest at hazard which required it to pay this debt. If it had stood off and let the railroad company and the town work out their own relations to each other it could have suffered no harm and no loss. There was no obligation on account of which, or reason why, the complainant should have connected itself in any way with this transaction, or have paid this money, except the ordinary desire to make a profit in the purchase of bonds. The fact that the bonds were void, whatever right it may have given against the railroad company, gave it no right to proceed upon another contract and another obligation of the town to the railroad company.

These propositions are very clearly stated in a useful monograph on the Law of Subrogation, by Henry N. Sheldon, and are well established by the authorities which he cites. — The doctrine of subrogation is derived from the civil law, and " it is said to be a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another. . . . It takes place for the benefit of a person who, being himself a creditor, pays

another creditor whose debt is preferred to his by reason of privileges or mortgages, being obliged to make the payment, either as standing in the situation of a surety, or that he may remove a prior incumbrance from the property on which he relies to secure his payment.    Subrogation, as a matter of right, independently of agreement, takes place only for the benefit of insurers; or of one who, being himself a creditor, has satisfied the lien of a prior creditor; or for the benefit of a purchaser who has extinguished an incumbrance upon the estate which he has purchased; or of a coöbligor or surety who has paid the debt which ought, in whole or in part, to have been met by another."    Sheldon on Subrogation, §§ 2, 3.

In § 240 it is said: "The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own."

This is sustained by a reference to the cases of *Shinn* v. *Budd*, 14 N. J. Eq. (1 McCarter) 234; *Sanford* v. *McLean*, 3 Paige, 117; *Hoover* v. *Epler*, 52 Penn. St. 522.

In *Gadsden* v. *Brown*, Speer's Eq. (So. Car.) 37, 41, Chancellor Johnson says: "The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and from its very nature never could have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound; and, as far as I have been able to learn its history, it never has been so applied.    If one with the perfect knowledge of the facts will part with his money, or bind himself by his contract in a sufficient consideration, any rule of law which would restore him his money or absolve him from his contract would subvert the rules of social order.    It has been directed in its application exclusively to the relief of those that were already bound who could not but choose to abide the penalty."

This is perhaps as clear a statement of the doctrine on this subject as is to be found anywhere.

Chancellor Walworth, in the case of *Sanford* v. *McLean*, 3 Paige, 122, said: "It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

In *Memphis & Little Rock Railroad* v. *Dow*, 120 U. S. 287, this court said: "The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties."

In the case of *Shinn* v. *Budd*, 14 N. J. Eq. (1 McCarter) 234, the New Jersey Chancellor said (pp. 236–237):

"Subrogation as a matter of right, as it exists in the civil law, from which the term has been borrowed and adopted in our own, is never applied in aid of a mere volunteer. Legal substitution into the rights of a creditor, for the benefit of a third person, takes place only for his benefit who, being himself a creditor, satisfies the lien of a prior creditor, or for the benefit of a purchaser who extinguishes the encumbrances upon his estate, or of a coöbligor or surety who discharges the debt, or of an heir who pays the debts of the succession. Code Napoleon, book 3, tit. 3, art. 1251; Civil Code of Louisiana, art. 2157; 1 Pothier on Oblig., part 3, c. 1, art. 6, § 2. 'We are ignorant,' say the Supreme Court of Louisiana, 'of any law which gives to the party who furnishes money for the payment of a debt the rights of the creditor who is thus paid. The legal claim alone belongs not to all who pay a debt, but only to him who, being bound for it, discharges it.' *Nolte & Co.* v. *Their Creditors*, 9 Martin, 602; *Curtis* v. *Kitchen*, 8 Martin, 706; *Cox* v. *Baldwin*, 1 Miller's Louis. R. 147. The principle of legal substitution, as adopted and applied in our

system of equity, has, it is believed, been rigidly restrained within these limits."

The cases here referred to as having been decided in the Supreme Court of Louisiana are especially applicable, as the code of that State is in the main founded on the civil law from which this right of subrogation has been adopted by the chancery courts of this country. The latest case upon this subject is one from the appellate court of the State of Illinois — *Suppiger* v. *Garrels,* 20 Bradwell App. Ill. 625 — the substance of which is thus stated in the syllabus:

"Subrogation in equity is confined to the relation of principal and surety and guarantors, to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to cases of insurance. . . . Any one who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer."

No case to the contrary has been shown by the researches of plaintiff in error, nor have we been able to find anything contravening these principles in our investigation of the subject. They are conclusive against the claim of the complainant here, who in this instance is a mere volunteer, who paid nobody's debt, who bought negotiable bonds in open market without anybody's indorsement, and as a matter of business. The complainant company has, therefore, no right to the subrogation which it sets up in the present action.

Without considering the other questions, which is unnecessary, the decree of the Circuit Court is

*Affirmed.*

---

These principles require also the affirmance of the decrees in the cases of *Ætna Life Insurance Co.* v. *Belmont,* No. 1135, and *Ætna Life Insurance Co.* v. *Milford,* No. 1136.

*It is so ordered.*