GEORGE C. WASHBURN, APPELLANT, v. MARY K.
OSGOOD, APPELLEE.

FILED JANUARY 4, 1894.    No. 4654.

Judgments: EXECUTIONS: ATTORNEY AND CLIENT: SUBROGA-
   TION. A. M. & Co. held a judgment against W. and instructed
   their attorney to collect the same by a levy upon and sale of
   W.'s land, if the attorney could thereby realize the money due
   on the judgment without A. M. & Co.'s having to become the
   purchasers of the land. The attorney had execution issued and
   levied upon W.'s land, and at the sale he purchased the land in
   the name of his wife at the full amount of the judgment, inter-
   est, and costs, paid the costs, and receipted the sheriff as A. M.
   & Co.'s attorney, for the amount of the bid. The sheriff re-
   ported the sale, and the same was confirmed and deed executed
   to the wife of the attorney. The attorney notified the general
   agent of A. M. & Co. of these proceedings and was given per-
   mission by the agent, because of threats made on the part
   of W. to set the sale aside, to hold the remittance a reasonable
   time. The attorney finally remitted to A. M. & Co. the amount
   of the W. judgment less some fees which he claimed they owed
   him in other cases. A. M. & Co. refused to allow the attorney
   these fees in the settlement and returned his remittance for that
   reason. Thereupon W., with actual knowledge of the levy
   upon and sale of the land, the confirmation of the sale and its

conveyance by the sheriff to the attorney's wife, paid A. M. & Co. the amount of the judgment to satisfy which his land had been already sold, and brought suit to set aside the sale and quiet the title in himself. *Held*, (1) That the attorney acted in good faith and according to the instructions of his clients; (2) that neither the attorney nor his wife held the land as trustee for A. M. & Co.; (3) that the rights of A. M. & Co., against the attorney were those of a creditor against his debtor; (4) that the judgment held by A. M. & Co. against W. was satisfied and extinguished by the levy upon and sale of his land; (5) that the payment made by W. to A. M. & Co. was a voluntary one, and that W. was not thereby subrogated to the rights of A. M. & Co. against the attorney, nor did he, by such payment, acquire any right as against the attorney, his wife, or the land bought by her at such sale.

APPEAL from the district court of Johnson county. Heard below before BROADY, J.

*S. P. Davidson*, for appellant:

An attorney having control of a judgment for his client cannot, without the consent of his client, expressed or implied, become a purchaser of lands at a sale under execution issued thereon; and if he does so purchase, he becomes, like any other agent, a trustee for his client. Such a trust arises by operation of law and continues until barred by lapse of time, or until terminated by an election to ratify the purchase, thus giving it validity. (*Pearce v. Gamble*, 72 Ala., 341; *Baker v. Humphrey*, 101 U. S., 494; *Henry v. Raiman*, 25 Pa. St., 354; *Zeigler v. Hughes*, 55 Ill., 288; *Harper v. Perry*, 28 Ia., 57; *Wheeler v. Willard*, 44 Vt., 640; *Case v. Carroll*, 35 N. Y., 385; Weeks, Attorneys, secs. 268–277; *Yerkes v. Crum*, 49 N. W. Rep. [N. Dak.], 423; *Cunningham v. Jones*, 37 Kan., 477.)

*Cobb & Harvey* and *Daniel F. Osgood*, contra.

RAGAN, C.

George C. Washburn brought this suit in the district court of Johnson county aga nst Mary K. Osgood, and

alleged in his petition that he was the owner and in pos-
session of a certain piece of land in Johnson county, and
that on the 18th day of March, 1889, one D. F. Osgood,
an attorney of this court, without authority of or from
Aultman, Miller & Co., caused an execution to issue to
satisfy a judgment in favor of Aultman, Miller & Co.
against the plaintiff, a transcript of which judgment was
filed in the district court of said Johnson county; that
Osgood caused said execution to be placed in the hands of
the sheriff of said Johnson county, who levied the same
upon the land of plaintiff; that a sale of said land was
made by the sheriff under such execution, and that he
struck off and sold said lands to the defendant, she being
then the wife of said Daniel F. Osgood, for $125, which
sum was bid at said sale by the said Daniel F. Osgood for
his wife; that prior to said sale the lands were appraised
at $1,200; that prior incumbrances on the land at the
time did not exceed $960; that the value of plaintiff's in-
terest in the lands was at the time not less than $240; that
said Daniel F. Osgood caused the sale to be confirmed and
the sheriff to execute to his wife, the defendant, a deed for
said lands; that neither the said defendant nor her said
husband paid the amount bid for said land at the sale
thereof; that all the proceedings, from the issuing of said
execution to the confirmation of said sale, were done without
the knowledge, consent, or authority of Aultman, Miller
& Co., who owned the judgment; that plaintiff had since
paid said judgment and the same had been released; that
plaintiff had offered to pay the defendant and her hus-
band all their legitimate expenses and costs paid out by
them, and requested them to convey the land to plaintiff,
which the defendant had refused to do; that plaintiff never
discovered that the issuance of said execution and the
making of said sale were without the authority of Ault-
man, Miller & Co. until after the sale was confirmed.
The prayer of the petition was that the sale might be set

aside and the title of the lands quieted and confirmed
in the plaintiff.  The answer averred that the execution
under which the land was sold was issued under the direc-
tion of Aultman, Miller & Co. and the sale duly confirmed
in open court; that plaintiff was actually notified of the
time and place of the sale; that defendant offered Wash-
burn, after the sale, to reconvey the land to him.  The
court rendered a decree dismissing Washburn's case, and
he comes here on appeal.

The material issue in the case is whether D. F. Osgood,
husband of the appellee, in having the execution issued
and levied upon this land, and the same sold to satisfy the
judgment of Aultman, Miller & Co. against Washburn,
was an intruder, or was acting by authority of Aultman,
Miller & Co.  To this point the record contains the fol-
lowing evidence: That on August 21, 1888, Aultman,
Miller & Co., in the county court of Pawnee county, ob-
tained a judgment against Washburn for $80.90 and costs;
that on October 26, 1888, a duly certified transcript of this
judgment was filed in the office of the clerk of the district
court of Johnson county; that in February, 1889, D. F.
Osgood had in his hands some business in the nature of
collections or claims for Aultman, Miller & Co.  On the
2d day of February, 1889, he wrote Aultman, Miller &
Co. in reference to these claims, and in said letter said to
them: "There is a transcript on file here, from Pawnee
county, of yours against G. C. Washburn.  Would you
like me to attend to that for you?  If so, please answer
soon."  On February 21, 1889, Aultman, Miller & Co.
wrote Osgood in reply and said: "Yours of the 2d re-
ceived in regard to sundry claims in your hands.  You say
there is a transcript on file there from Pawnee county,
judgment taken against G. C. Washburn.  We would be
very glad to have you take charge of this matter for us;
and if so, please advise us in your correspondence in refer-
ence to this judgment."  March 19, 1889, D. F. Osgood
wrote the following letter to Aultman, Miller & Co.:

"TECUMSEH, NEB., March 19, 1889.

"*Aultman, Miller & Co., Akron, Ohio*—DEAR SIR: We have to-day had an execution issued against G. C. Washburn. He has land in this county, and there is no doubt but the collection can be made with some trouble and expense. Perhaps it would be well for you to notify Story & Story, of Pawnee City, that the matter is in my hands, and am proceeding to collect.

"Yours truly, D. F. OSGOOD."

April 3, 1889, Aultman, Miller & Co. wrote to Osgood another letter as follows:

"AKRON, OHIO, April 3, 1889.

"*D. F. Osgood, Esq., Tecumseh, Neb.*—DEAR SIR: We are just in receipt of a letter from Story & Story, attorneys at Pawnee City, in answer to ours of March 27, in reference to your action in the issuing of an execution on the judgment transcripted to your county by them against G. C. Washburn. They have rendered us a bill for services rendered up to date, and leave it for us to say whether they shall go ahead with the case or drop out and let you finish it for us. We have decided upon the latter, and this day pay them for their services they have rendered us in this case. You will now proceed to get the money for us out of this land. We are sorry, however, that you have advertised this land for sale, because we were in hopes that the expense of this could be avoided and Mr. Washburn induced to pay this judgment without .going to that expense. If it is not too late yet to do this, we want you to do so and save this extra expense. Are there any other incumbrances upon this land? If there are, we don't want you to sell this land unless you are sure you can get the money and take up prior claims. Let us hear from you by return mail and oblige.

"Yours truly, R. H. WRIGHT,
"*Tr. Leohner.*"

April 9, 1889, Osgood wrote Aultman, Miller & Co. that the land in controversy had mortgages on it for $886, and that he, Osgood, would see that they, Aultman, Miller & Co., did not have to buy the land and that they got their money on their judgment. The land was sold at public auction by the sheriff April 24, 1889, and bid in by the appellee. Sale was confirmed and deed made to her May 8, 1889. D. F. Osgood paid the costs of the sale and receipted to the sheriff in full for Mrs. Osgood's bid, which was more than the execution called for; that is, more than the amount of Aultman, Miller & Co.'s judgment and interest and the costs of the sale. We have quoted this evidence somewhat at length and contrary to our usual custom, and we do this because the correctness of the conduct of an attorney is challenged in this suit. Not only does the evidence not sustain appellant's allegations in his petition, but it affirmatively shows, and that without contradiction, that D. F. Osgood had authority from Aultman, Miller & Co., as their attorney, to collect this judgment against Washburn by a levy upon and sale of the land in suit herein. This is sufficient to dispose of this appeal; but it is alleged in his petition by Washburn that neither the appellee nor her husband paid the amount bid for the land at the sheriff's sale. This is not a matter to the prejudice of or of which Washburn can complain. The sheriff could only sell the land for cash. D. F. Osgood receipted in full to the sheriff for the amount of the judgment and interest, and he did this as Aultman, Miller & Co.'s counsel, and at once became their debtor for the amount. His receipt estops him from saying the sheriff did not pay him the amount of his client's debt made by the levy and sale under this execution. The report of the sale by the sheriff estops him, as against Aultman, Miller & Co., from alleging he was not paid the bid; and while he and the sureties on his official bond might be liable to Aultman, Miller & Co. for the amount realized by the sale of the

land, neverthelesss the proceedings operated to satisfy the judgment of Aultman, Miller & Co. against Washburn.

The learned counsel for appellant contends "that an attorney having control of a judgment for his client cannot, without his client's consent, become a purchaser of land at a sale under execution issued thereon, and if he does so, will hold the land so purchased as trustee for his client." We think the rule as stated by counsel has many, very many, exceptions, and is too broadly stated. But suppose it entirely correct. How does that help appellant? Aultman, Miller & Co. are not seeking to have Mrs. Osgood declared their trustee in her holding of this land, and their own evidence is that they did not wish their attorney to sell the land under the execution, if such sale would result in their having to become purchasers of the land. Washburn, because he paid the amount of the judgment and interest to Aultman, Miller & Co., is not therefore entitled to have this sale set aside nor to be subrogated to their rights. Washburn made this payment voluntarily, with full knowledge that the land had been sold, the sale confirmed, and a deed made to the appellee; that is, he paid to Aultman, Miller & Co. a debt that he knew, or was bound to know, had already been paid by the sale of his land. If Washburn supposed he was still indebted on this judgment to Aultman, Miller & Co., he has never pleaded nor proved such supposition, and it would not enable him to invoke successfully, in this case, the doctrine of subrogation had he done both. In *Ætna Life Ins. Co. v. Middleport*, 124 U. S., 534, the supreme court of the United States say: "The doctrine of subrogation in equity requires, first, that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and second, that in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the

debt.  *  *  *   The right is never accorded in equity to one who is a mere volunteer in the paying of a debt of one person to another." It is evident that Washburn has not brought himself within this rule, and on no other theory than that of subrogation can his case be maintained. But if he were entitled to be subrogated to the rights of Aultman, Miller & Co. against D. F. Osgood, the only right Aultman, Miller & Co. have against D. F. Osgood is, not the right to regard him or his wife as holding this land as their trustee, but the ordinary right of a creditor against a debtor.

There is evidence in the record showing that D. F. Osgood did not account to and pay over to Aultman, Miller & Co. the amount realized on the Washburn judgment; but there is also evidence that appellee authorized her husband to use a sum of money belonging to her and in his hands to purchase this land; that D. F. Osgood did so; that he advised Aultman, Miller & Co.'s agent that he, Osgood, had the money on the Washburn judgment and was, by the agent, given permission to hold it a reasonable time, as Washburn was threatening to institute proceedings to set aside the sale; that Osgood finally remitted the amount of the judgment and interest to Aultman, Miller & Co., deducting therefrom the amount of certain fees owing him by Aultman, Miller & Co. in other matters; that Aultman, Miller & Co. refused to accept the amount remitted by Osgood, but not on the ground that he had not their authority to collect the Washburn judgment, by sale of the land, but on the ground of fees deducted in other cases; that they returned Osgood's remittance to him; and that they did not return it to him. But whatever may be the materiality of this evidence, after a finding that D. F. Osgood acted in the premises by authority of Aultman, Miller & Co., and as their attorney, it, and the credibility and weight thereof, and the inferences and conclusions to be drawn therefrom, were for the trial court. The decree of the district court is right and is

AFFIRMED.