# TAYLOR *v.* MacGREAL.

EQUITY ; SUBROGATION ; INTEREST.

Where a decree in a suit by a mortgagee to foreclose a mortgage of land, subrogates the mortgagee to the rights of prior lienors, whose purchase money liens were discharged with a portion of the mortgage loan and the balance used in making improvements by the infant mortgagor, who disaffirmed her mortgage contract on reaching majority, and directs a sale of the property and the application of the proceeds thereof, first to the payment to the complainant, with interest, of the amount of such liens, the complainant is entitled to interest to the date of sale, and not merely to the filing of the bill to foreclose, in an accounting by the trustees of the proceeds of a sale made in pursuance of such decree.

No. 889. Submitted April 11, 1899. Decided May 4, 1899.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia sitting as an equity court, in a suit to foreclose a deed of trust. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Jas. S. Edwards, Mr. Job Barnard* and *Mr. Wm. F. Mattingly* for the appellants.

*Mr. Henry E. Davis* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This appeal is from the final decree of the Supreme Court of the District of Columbia settling the terms of the distribution of the proceeds of a sale of a lot and the improvements thereon, made under a former decree passed in conformity with the decision of the Supreme Court of the United States in the main case, which has the following history :

On September 3, 1887, the title to the lot passed to Robert E. Moore and his wife, Carlotta M. Moore, as tenants by the entirety, subject to two liens for purchase money secured by deeds of trust. On the death of Robert E. Moore, on April 29, 1888, Carlotta M. Moore became sole owner in fee subject to the aforesaid liens. Desiring to build a house upon the lot, Mrs. Moore borrowed $8,000 from Mrs. Utermehle on October 22, 1889, and executed a note therefor payable in three years, with interest, secured by a formal deed of trust. By the terms of the agreement the purchase money liens aforesaid, with accrued interest and unpaid taxes, were first paid by Mrs. Utermehle from the loan and the remainder was expended in the construction of the house. Mrs. Moore married W. P. MacGreal February 17, 1890. They entered and occupied the house about April 1, 1890, and remained therein until the sale under the decree before referred to, paying no taxes meanwhile. She was a minor at the time of these transactions (a fact unknown to Mrs. Utermehle), and did not attain full age until June 20, 1890, on which date, in accordance with a notice given one week before, she executed and recorded an instrument disaffirming the contract.

The principal of the loan having matured, by the terms of the contract, through the failure of Mrs. MacGreal to pay the interest, Mrs. Utermehle filed a bill to foreclose the mortgage. The bill was dismissed, and an appeal therefrom was taken to the Court of Appeals. This court, being of the opinion, first, that Mrs. Utermehle should be subrogated to the rights of the holders of the purchase money notes, with their liens aforesaid, and, second, that Mrs. MacGreal, by her conduct in obtaining the loan, erecting the house with the money obtained therefrom, and retaining the possession and use of the same, was estopped to disaffirm the contract, reversed the decree appealed from and remanded the cause to the court below, with direction to pass a decree foreclosing the mortgage for the entire amount and ordering a sale

of the lot and improvements in satisfaction thereof.  *Utermehle* v. *MacGreal,* 1 App. D. C. 359, 377.

The cause was then appealed by Mrs. MacGreal to the Supreme Court of the United States, where this decree was reversed, that court being of the opinion that there was error in holding that Mrs. MacGreal had no right to disaffirm the contract, and relieve herself, in part, from its obligation.  *MacGreal* v. *Taylor,* 157 U. S. 688, 701.  The court was emphatic, however, in denying the effect of the exercise of the right to disaffirm as claimed on behalf of Mrs. MacGreal.

Having disaffirmed, she is not entitled, it was said, " as between herself and the estate of Mrs. Utermehle, to be protected except in the enjoyment of such rights in the property in question as she had at the time it was incumbered by her disaffirmed deed of trust.  She is not entitled to make profit out of those whose money has been used, at her request, in protecting and improving her estate."  Referring to the liens for the purchase money subject to which Mrs. MacGreal held the title to the lot, it was said: "These debts having been paid by Mrs. Utermehle, the appellees are entitled, in equity, to be subrogated to the rights of the persons who held them, and who were about to foreclose the liens therefor when the application was made to Mrs. Utermehle for the loan of $8,000 to be used in meeting those debts and in improving the lot in question."

Turning to the second point necessary to be decided, it was then said: "And within the meaning of the rule that upon the infant's disaffirmance of his contract, the other party is entitled to recover the consideration paid by him which remains in the infant's hands or under his control, it may well be held—and gross injustice will be done in this case if it be not so held—that the money borrowed from Mrs. Utermehle is, in every just sense, in the hands of Mrs. MacGreal.  To say that the consideration paid to Mrs. MacGreal for the deed of trust in 1889 is not in her

hands, when the money has been put into her property in conformity with the disaffirmed contract, and notwithstanding such property is still held and enjoyed by her, is to sacrifice substance to form and to make the privilege of infancy a sword to be used to the injury of others, although the law intends it simply as a shield to protect the infant from injustice and wrong."

The only error found in the decree of the Court of Appeals was, that it, in effect, adjudged, "that the appellees, are entitled to have their entire debt first paid, even if all the proceeds of sale be required for that purpose."

The remainder of the opinion, in conformity with which further proceedings were ordered to be had, and the true meaning of which is involved in this appeal, is in the following language:

"The decree should have been so framed as to place Mrs. MacGreal, so far as it could be done, in the position occupied by her at the time the deed of trust was given; for only by such a decree can the privilege of infancy, resulting from incapacity to contract, be effectively protected. A decree giving the appellees a preference in the distribution of the proceeds of sale for the entire claim necessarily must rest upon the ground that one who obtains from an infant a deed of trust conveying his real estate to secure the repayment of money loaned to him, and to be applied, and which is applied, in improving such estate, may thereby make the disaffirmance of the infant ineffectual in every case where the property, upon being sold, does not bring more than the debt attempted to be secured. But no such result can properly happen if the court enforces the established rule that, upon the disaffirmance of a deed made during infancy, the infant is entitled to recover the property conveyed by him, and the adult to recover such of the consideration paid by him as may remain in the hands of the infant at the time of the disaffirmance. As Mrs. MacGreal ought not to hold the property in its improved state without accounting, as

far as possible, for the money used in protecting it from sale for existing liens, and in improving it, there must be a sale in order that justice may be done.   But as the disaffirmance of her deed restores her rights in the property, a sale ought not to have the effect of depriving her of the interest she had at the time the deed of trust was executed.   The decree for a sale was proper, but, upon the showing made by this record, it should direct the proceeds to be applied, first, in repaying to the appellees, with interest, the sums paid by Mrs. Utermehle in discharge of the prior liens created by the deeds of 1886 and 1887, and by the taxes then upon the property; second, in paying Mrs. MacGreal an amount equal to the value of the lot at the institution of this suit (less such prior liens and taxes) without interest on that amount, and without taking into consideration the value of the improvements placed on the lot; and third, in paying to the appellees such of the proceeds of sale as may remain, not exceeding the balance due on the loan, with interest. This last sum would represent, so far as may be, the value of the improvements put upon the lot with Mrs. Utermehle's money.   *Lynde* v. *McGregor*, 13 Allen, 182, 185.   Any other decree will make the disaffirmance by the infant ineffectual if the property, upon being sold, does not bring more than the debt attempted to be secured.   If the property, in its improved condition, does not bring enough to pay the whole debt due the appellees, they will be without remedy for the deficiency.   If any balance should remain after satisfying the above claims, in the order mentioned, it will belong to Mrs. MacGreal."

On return of the cause to the Supreme Court of the District of Columbia the lot and improvements were sold together at public sale, for the sum of $9,250, and reference was made to the auditor to state the account of the trustees appointed to make the sale, and report the basis of distribution of the fund.   From this report it appears that, deducting taxes for the years 1890 to 1898 inclusive, and expenses of making

the sale, the net sum for distribution amounted to $7,622. The value of the lot, appraised as of June 23, 1890, is $3,900. Adding thereto the value of adjacent party walls, appraised at $421.72, this amount would be increased to $4,321.72. The sums paid by Mrs. Utermehle to discharge the purchase money liens, October 22, 1889, and $13.61 of taxes then due, were shown to amount to $3,008.48. The debt bore interest at the rate of six per cent. per annum from date until paid, which, calculated to the date of sale, January 26, 1898, amounted to $1,491.20, and added to the principal, made a total of $4,499.68.

The auditor was of the opinion that this interest, as well as the principal, was a first charge upon the proceeds of sale, and as it amounted to more than the value of the lot, he reported against the claim of Mrs. MacGreal to participation in the distribution.

The auditor also reported against the addition of the estimated value of the party walls to the appraised value of the lot.

Exceptions to the report, taken upon both grounds by Mrs. MacGreal, were sustained by the court.

The court was of the opinion, first, that the value of the lot should be increased by that of the party walls, and, second, that the interest upon the prior liens should be calculated to the date of filing the bill to foreclose, namely, June 23, 1890, and no later.

According to this view, the value of the lot appraised for the benefit of Mrs. MacGreal, as of that date, was $4,321.72; and the amount of the paramount lien was the principal sum of $3,008.48, plus the interest to June 23, 1890, of $120.84, making a total of $3,145.95. The difference between these amounts—$1,175.77—was decreed to be paid to Mrs. MacGreal, in preference to the remainder of the claim of Mrs. Utermehle's executors.

Believing that the auditor's report responded to the directions of the Supreme Court, in the opinion aforesaid, respect-

ing the manner of the distribution to be made of the proceeds of the sale, in so far as it allowed interest on the paramount liens to the date of that sale, we find it unnecessary to determine whether the evidence relating to the party walls justifies an increase of the appraised value of the lot. Increased by the value of the party walls, the amount is still less than the sum total of principal and interest as computed by the auditor.

We perceive nothing in the opinion of the Supreme Court of the United States to warrant the conclusion that, in directing the proceeds of the sale to be applied, "first, in repaying to the appellees, with interest, the sums paid by Mrs. Utermehle in discharge of the prior liens," the computation of that interest should extend only to the date of filing the bill. The date for the assessment of the value of Mrs. MacGreal's lot was fixed as of that date because she then finally disaffirmed the contract and refused to perform it.

The principal sums of the first liens, with the interest stipulated thereon, were valid charges upon the property notwithstanding her disaffirmance of the contract for the loan. It was her duty then to pay, or tender payment of those sums, at least for the protection of her lot; no matter what her rights might be in respect of the deed of trust for the benefit of Mrs. Utermehle. By contesting the entire demand, she has postponed that payment for years, during which she has had the enjoyment of her lot with the house built thereon with the money of Mrs. Utermehle. If those liens had not been discharged by Mrs. Utermehle, their holders would, unquestionably, be entitled to their principal and interest in full. By declaring Mrs. Utermehle subrogated to the rights of the holders of those liens, the court could have meant nothing less than their full rights.

Subrogation means the substitution of one in the place of an obligee with all his rights and remedies against the obligor. It is a legal fiction—a creation of equity—by force

of which an obligation extinguished by the payment of a third person, for his own protection, or at the request of the maker or other obligor, is regarded as still subsisting for the benefit of this third person. When necessary to the full protection of the equitable rights of the payer, the obligation is treated as having been equitably assigned to him, and its lien as kept alive for his benefit. *Prairie Nat. Bank* v. *United States*, 164 U. S. 227, 231; *Aetna Ins. Co.* v. *Middleport*, 124 U. S. 534, 549; 3 Pom. Eq. Jur., Secs. 1211, 1212.

The benevolent fiction in such cases is, that the actual payer and the holder of the obligation have come together, and that the former has advanced to the latter the amount of his claim against the debtor, or those charged with its payment, and has, in turn, received from him an assignment of the claim for his own benefit. *Wenlock* v. *River Dee Co.*, L. R. 19 Q. B. Div. 155: S. C., 10 App. Cas. 354.

Applying the doctrine in this case, Mrs. Utermehle must be regarded as having received an assignment of the paramount liens from their holders at the time of her payments to them.

The obligations, thus equitably assigned, bore interest by their terms until final payment, and that interest has continued to run on behalf of the equitable assignee, in the same manner as it would had they remained unpaid in the hands of the original holders, or been actually assigned to Mrs. Utermehle in a transaction to which Mrs. MacGreal was no party. There is no other logical conclusion.

For these reasons the decree must be reversed, with costs, and the cause remanded for the passage of a final decree in conformity with this decision. It is so ordered.

*Reversed.*