Mobile Construction Co., an Illinois Corporation, Albert
F. Stroka, and Commercial National Bank of Chicago, for the Use of Said Mobile Construction Co. and
Albert F. Stroka, Plaintiffs-Appellees, v. The Phoenix Insurance Company, a Capital Stock Company,
United States Fidelity and Guaranty Company, a
Capital Stock Company, and The Home Insurance
Company, a Capital Stock Company, Defendants-Appellants.

Gen. No. 52,624.

First District, Fourth Division.

January 7, 1970.

Rehearing denied February 24, 1970.

Epton, McCarthy, Bohling & Druth, of Chicago (Bernard E. Epton, Edward A. McCarthy, and Alan R. Miller, of counsel), for appellants.

No brief for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants appeal from a summary judgment in favor of plaintiffs in the sum of $4,512.60 and from an order denying defendants' motion for summary judgment. The defendants contend that the plaintiffs did not have a valid claim to the proceeds of three fire insurance policies as subrogee of the Commercial National Bank of Chicago (hereafter called "Bank") since the Bank's insurable interest had terminated two months prior to the fire loss.

On May 28, 1963, Mr. and Mrs. Conrad Barnett borrowed $5,830 from the Bank in order to purchase a tavern known as the Lemon Twist West. They executed a promissory note to the Bank secured by a chattel mortgage on the contents of the tavern. Albert Stroka, a relative of the Barnetts, executed a written guaranty of the loan and assigned his savings account to the Bank as further security for payment.

At the time the loan was made, the Bank requested that the Barnetts obtain fire insurance policies on the tavern with lender's loss payable clauses attached naming the Bank as beneficiary. The defendants executed and delivered the policies to the Barnetts on August 9, 1963, after the first year's premium was paid by the

Barnetts. The lender's loss payable clause was attached to each policy on November 18, 1963, naming the Bank as beneficiary.

Almost immediately the Barnetts became delinquent on their loan. Payments were made by Stroka and the Mobile Construction Company (hereinafter called "Mobile") to keep the loan current. The Mobile Construction Company was a corporation owned solely by Albert Stroka.

The Barnetts continued to be delinquent on the loan and on March 7, 1964, Stroka, at the demand of the Bank, paid the balance of $1,888.12 then due on the loan. Thereupon the Bank assigned the promissory note of the Barnetts and their chattel mortgage on the contents of the tavern to Mobile. Mobile, as assignee of the note, obtained a judgment against the Barnetts pursuant to the confession clause in the note in the amount of $4,512.20. The judgment remains unpaid.

On May 6, 1964, while Mobile was in the process of foreclosing the chattel mortgage, a fire occurred at the Lemon Twist West Tavern destroying the mortgaged chattels. No claim was made by the Bank nor did it file proof of loss. Subsequently the present proceeding was brought by Mobile claiming the proceeds of the insurance policies as subrogee of the Bank. Stroka was later added as a party plaintiff. The Barnetts also filed a suit, as beneficiaries of the same policies, against the defendant insurers which is still pending in the circuit court.

Both plaintiffs, Stroka and Mobile, and the defendant insurance companies moved for summary judgment. The court denied the defendants' motion and granted the plaintiffs'. Judgment was entered in favor of the plaintiffs in the amount of $4,512.60, being $1,504.20 against each of the insurers.

Defendants' petition for summary judgment stated that the lender's loss payable endorsement which was attached to and formed part of the Barnetts' insurance policies created an obligation to pay the Bank in case of fire loss to the tavern. The endorsement was attached to the policies to protect the lender Bank from destruction of the security given for the loan. The lender's loss payable clauses provided:

> Loss, if any, under this policy shall be payable to Commercial National Bank of Chicago whose address is 4806 North Western Avenue, Chicago, Illinois as lender, mortgagee, or trustee, as interest may appear.

Defendants contend "that the only obligation of defendants was to the Commercial National Bank of Chicago and then only to the extent of the loan interest of the Commercial National Bank of Chicago, which at the time of the fire was nonexistent. Therefore, it had no interest under the terms of the lenders' loss payable endorsement and further had no insurable interest in the premises at the time of the fire."

██ In its motion for summary judgment plaintiffs contended that as a guarantor they were entitled to become subrogated to the rights of the creditor-guarantee Bank when the debt of the principal debtor was paid. In London & Lancashire Indemnity Co. of America v. Tindall, 377 Ill 308, 313, 36 NE2d 334, the court stated:

> Subrogation is an equitable remedy, which, in effect, makes an assignment of securities held by the creditor available to the estate or subrogee. (Bishop v. O'Conner, 69 Ill 431.) Subrogation means the placing of one in the shoes of another, invested with all the rights of that other, in regard to certain obligations paid by him, who is thus subrogated. It is the substitution of another person in the place of a credi-

tor or claimant, to whose rights he succeeds in relation to the debt or claim asserted, and which has been paid by him, involuntarily. Dunlap v. Peirce, 336 Ill 178.

In In re Freeman & Brooks, 1 F2d 430, 434, the court, in discussing the doctrine of subrogation, stated:

> The right of subrogation is not a matter of contract, but is an equitable right accruing to one obligee as surety or otherwise to make payments, whereby, upon the making of the payments, the one so obligated succeeds to all of the rights of the person to whom he made the payment.

Freeman, supra, cites Aetna Life Ins. Co. v. Middleport, 124 US 534, 548, where the court quoted with approval from the Law of Subrogation by Henry N. Sheldon:

> The doctrine of subrogation is derived from the civil law, and "it is said to be a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another . . . ."

A further examination of Sheldon's monograph discloses at page 3 of his work:

> The party who is subrogated is regarded as constituting one and the same person with the creditor whom he succeeds.

At page 10 Sheldon discusses the general doctrine of subrogation:

> In short, the doctrine of subrogation is that when one has been compelled to pay a debt which ought to have been paid by another, he is entitled to a cession

of all the remedies which the creditor possessed against that other. To the creditor they may have been equally liable; but if, as between themselves, there is a superior obligation resting upon one to pay the debt, the other, after paying it, may use the creditor's securities to obtain reimbursement. . . . Although, as between debtor and creditor, the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive, so far as may be necessary to preserve the securities. When the money due upon a debt is paid, this will operate as a discharge of the indebtedness, or in the nature of an assignment of it, subrogating him who pays it to the place of the creditor, as may best serve the purposes of justice and the just intent of the parties.

Finally, in the recent case of National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F2d 843, 844, (1969) the court stated:

Subrogation is an old term, rooted in equity, and semantically stemming from words meaning "ask under." Today we use the parallel phrase, "stand in the shoes of."

■ Therefore, we cannot agree with the defendants' contention that the plaintiffs did not become subrogated to all of the rights of the Bank, including the right to collect under the lender's loss endorsement. As of March 7, 1964, (when Stroka paid the Bank) the plaintiffs and the Bank became "one person," and by operation of law plaintiffs were subrogated to the Bank's insurable interest in the policies and were entitled to collect under the lender's loss endorsement for a loss occurring after that date while the policies were still in force.

In the alternative the defendants contend that the plaintiffs cannot collect the insurance proceeds because of the Barnetts' alleged misconduct which violated the terms of the insurance policies. In their answer to the complaint as amended, and again in their answer as twice amended, the defendants assert that the Barnetts increased the hazards to the insured property by means within their knowledge and control, failed to produce their records as required under the terms of the policies, and unlawfully and intentionally submitted an excessive and exaggerated claim for loss which constituted fraud, thereby voiding the policies. In their motion for summary judgment they argue that the Barnetts' misconduct bars plaintiffs' claim. However, since the plaintiffs stand in the place of the Bank, this defense cannot succeed. The plaintiffs were subrogated to all the rights and remedies of the Bank and their claim is properly based on the lender's loss payable clauses which contained the provision that:

> This insurance, solely as to the interest therein of the lender, mortgagee or trustee, shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property . . . .

The defendants also contend that if they are required to pay the plaintiffs for the insurance loss they would be entitled to subrogation and could therefore recover from Stroka on the guaranty. Defendants argue that this would be patently circuitous. Payment by plaintiffs of the amount due the Bank on the Barnetts' loan terminated the guaranty and extinguished their liability. Therefore, payment by the defendants for the fire loss would not entitle them to recover back from the guarantor.

335

For the reasons herein presented, the court's rulings granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment are affirmed.

Affirmed.

STAMOS, P. J. and LEIGHTON, J., concur.