Alan Geoffrey **MEREDITH,** Libelant-Appellant,

v.

THE IONIAN TRADER, her Engines, Boilers, etc., and Compania de Navegacion Cristobal, S.A., Claimant-Respondent-Appellee.

No. 316, Docket 25882.

United States Court of Appeals
Second Circuit.

Argued May 5, 1960.

Decided May 31, 1960.

J. Edwin Carey, New York City (Hill, Rivkins, Middleton, Louis & Warburton, New York City, on the brief), for libelant-appellant.

James E. Freehill, New York City (Robert H. Peterson and Hill, Betts & Nash, New York City, on the brief), for claimant-respondent-appellee.

Before LUMBARD, Chief Judge, MEDINA, Circuit Judge, and JAMESON, District Judge.*

LUMBARD, Chief Judge.

This libel in admiralty arose as the result of water damage suffered to a cargo of wheat belonging to the Government of Pakistan and shipped from Tacoma, Washington, to Karachi, Pakistan, on the Ionian Trader. Six days prior to the expiration of the one year statute of limitations in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), the libel was filed in the name of the Government of Pakistan against the Ionian Trader by the proctors for the insurance underwriters of the cargo. The libel alleged that the damage to the cargo was a breach of the Ionian Trader's duty as a common carrier by sea and sought damages of $10,000. Subsequent to the running of the statute of limitations the underwriters settled with the Government of Pakistan its claim under the insurance policy and later made payment.

The appellant, Alan Meredith, assignee of the underwriters, thereupon moved to substitute himself as libelant in place of the Government of Pakistan, claiming that he was subrogated to all of the Government's rights against the Ionian Trader. The court permitted the substitution, but also allowed the appellee to amend its answer to the libel to assert two new defenses, lack of authority by the underwriters or their proctors to bring the original libel on behalf of the Government of Pakistan, and the statute of limitations as a bar to suit by the underwriters or their assignee as substituted libelant. After a trial the court held that but for the validity of the affirmative defenses in the amended answer the libelant would be entitled to judgment. The court ruled, however, that the original libel filed in the name of the Government of Pakistan was a nullity because the insurance policy did not give the underwriters authority to bring suit in the name of the insured and, second, that, since the underwriters had no inter-

* Sitting by designation.

est in the insured's claim against the Ionian Trader prior to their payment to the insured, appellant was not entitled to have his substitution relate back to the time of filing of the original libel and was therefore barred by the statute of limitations. The court therefore dismissed the libel. D.C.S.D.N.Y.1959, 173 F.Supp. 29. We affirm the judgment.

Appellant relies solely upon a provision of the Institute Cargo Clauses of the insurance policy for the authority of the underwriters or their proctors to bring suit on behalf of the insured. This provision states:

> "It is further agreed that the assured shall with all diligence bring and prosecute under the direction and control of the Underwriters such suit or other proceedings to enforce the liability of the carrier or bailee as the Underwriters shall require and the Underwriters agree to pay such proportion of the costs and expenses of any such suit or proceedings as attach to the amount under the policy."

This provision states that "the assured shall \* \* \* bring \* \* \* suit" and does not grant authority to the underwriters to sue on its behalf. Though the provision may be understood to "require" the insured to prosecute a suit at the underwriters' request and under their "direction and control," it was quite clearly not intended to constitute the underwriters the insured's agent for purposes of suit. Rather, the provision appears to be a co-operation clause, the breach of which by the insured would entitle the underwriters to refuse to make payment under the policy.

Were there any doubts that the quoted provision of the Institute Cargo Clauses did not grant authority to the underwriters to bring suit on behalf of the insured, the "Settlement of Claims" agreement submitted to the insured by the underwriters and assented to by the insured subsequent to the running of the statute of limitations would establish the point beyond reasonable doubt. A clause of the printed agreement as submitted by the underwriters specifically authorized use of the insured's name in bringing suit, but this provision was deleted by the Government of Pakistan before it signed the agreement.[1] Had the underwriters thought that the insurance policy itself authorized the institution of suit in the name of the insured, there would have been no necessity for the inclusion of such a provision in the "Settlement of Claims" agreement. Moreover, had the Government of Pakistan intended to grant such agency power to the underwriters, it would not have struck out the clause of the "Settlement of Claims" agreement. Thus, we agree with the district court that neither the underwriters nor their proctors had authority to file the libel in the name of the Government of Pakistan.

A suit initiated without authority from the party named as plaintiff is a nullity and any judgment obtained in

---

[1] "Lloyd's Settlement of Claims Abroad

\* \* \* \* \*

"Lloyd's Agents having settled and purchased from us a claim for Partial Loss on the under-mentioned goods it is understood and admitted that upon payment of that claim you will be subrogated (as and to the extent provided by the law of England) to all our rights and remedies in and in respect of the said goods and *will be authorized to make use of our name for the purpose of any proceedings or measure, legal or other which you may think fit to take for the enforcement of such rights or remedies and accordingly we undertake to fur-* nish *you with all documents and correspondence relating thereto, and to make any such affidavits or declarations and to give any such oral evidence as we can properly make or give and* We agree generally to render you such assistance as you may from time to time reasonably require in connection with any such proceedings or measures you indemnifying us against all liability costs charges and expenses incurred on your behalf in connection therewith *and with the use of our name.*

\* \* \* \* \*

(The portion of the agreement in italics was struck out by the insured before signing the agreement.)"

such a suit is void. Pueblo of Santa Rosa v. Fall, 1927, 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658; Southern Pine Lumber Co. v. Ward, 1908, 208 U.S. 126, 28 S.Ct. 239, 52 L.Ed. 420, affirming 1905, 16 Okl. 131, 85 P. 459; In re Retail Chemists Corp., 2 Cir., 1933, 66 F.2d 605, 608, and cases there cited. A party to such a suit may by motion or pleading dispute the authority of the opposing party "to act for the party in whose name he is proceeding, and, if the authority is not shown, the court will dismiss the action for want of parties before it." In re Retail Chemists Corp., supra at page 608. Because of their lack of authority to sue on behalf of the Government of Pakistan, the filing of the libel by the proctors for the underwriters was of no effect and cannot be the foundation of any rights of the underwriters or the appellant.

■ Appellant asserts, however, that at the time suit was filed in the name of the Government of Pakistan, the underwriters had a sufficient interest in the Government's claim against the Ionian Trader as potential subrogees of that claim to have given them the right to sue the Ionian Trader on their own behalf. Proceeding from this premise, the appellant argues that the underwriters (or appellant as their assignee) should not be penalized merely because suit was commenced in the wrong name; the substitution of appellant should be related back to the time of filing of the original libel so as to avoid the bar of the statute of limitations. While we might well be inclined in other circumstances to agree with appellant's argument, we cannot accept it here because appellant's premise is mistaken.

■ An insurer acquires no interest in a claim of the insured against a third party until it makes payment under the contract of insurance or suffers a judg-ment against it in the amount of the claim.[2] Restatement of Restitution § 162. The doctrine of subrogation is based upon principles of equity; its purpose is to afford relief to those required, as insurers, to pay a legal obligation which ought to have been met by another. Aetna Life Ins. Co. v. Town of Middleport, 1888, 124 U.S. 534, 8 S.Ct. 625, 31 L.Ed. 537; Memphis & Little Rock R. R. v. Dow, 1887, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595. To obtain the benefits of the doctrine of subrogation one of the conditions which the insurer must fulfill is payment, or sufferance of a judgment requiring payment, of the obligation owed the insured. Prairie State Nat. Bank of Chicago v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Aetna Life Ins. Co. v. Town of Middleport, supra. The mere anticipation that the insurer will make payment of the insured's claim does not entitle it to bring suit on its own behalf as subrogee. Prior to the moment of payment, or until it becomes legally bound to make payment, the insurer has not been damaged and therefore possesses no equity or interest upon which he can maintain an action against the third party. We disagree with New Hampshire Fire Ins. Co. v. The Perla, D.C.D.Md.1949, 84 F.Supp. 715, relied upon by appellant, as that decision is contrary to these principles.

Appellant also relies upon our decision in St. Paul Fire & Marine Ins. Co. v. United States Lines Co., 2 Cir., 1958, 258 F.2d 374, reversing M. V. M., Inc. v. St. Paul Fire & Marine Ins. Co., D.C.S.D. N.Y.1957, 156 F.Supp. 879, certiorari denied, 1959, 359 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574. There suit was brought by the insured upon his contract of insurance, and the defendant insurance company, in accordance with Rule 14(a), Federal Rules of Civil Procedure, 28 U.S.

2. Perhaps a contract of settlement obligating the insurer to make payment would give the insurer a sufficient interest to entitle it to sue in its own behalf. Since the "Settlement of Claims" agreement between the Government of Pakistan and the underwriters was not signed until after the running of the statute of limitations, we need not consider what the effect of such an agreement would be on the insurer's right to sue in its own name.

C.A., impleaded the shipping line whose fault had allegedly caused the damage to the insured's goods. The third party defendant argued on appeal that dismissal of the action over against it by the district court was proper because the insurer had no right of subrogation upon which it could implead the shipping company until it had actually made payment of, or been held liable for, the insured's claim. The court did not disagree with the third party defendant's statement of the law of subrogation, but found that law to be irrelevant to decision of the case. It held, relying upon the language of Rule 14(a), that under the Federal Rules a defendant may implead a third party "who is or may be liable to him," even though the liability of the third party to the defendant is conditional upon the plaintiff's recovery from the defendant. The court did not decide, or even suggest, that the defendant might have brought suit against the third party on his own behalf prior to the commencement of the plaintiff's action. The decision thus lends no support to the appellant's claim here.

Allowing an insurer to initiate suit prior to payment of the insured's claim would present numerous practical difficulties. For example, were the insurer permitted to recover a judgment, the third party might be subjected to double liability, since the doctrine of res judicata would not bar a second suit by an insured who had received no compensation under his insurance contract. Moreover, if the insured chose to bring his action against the third party, the insurer might obtain a windfall, because he would have recovered money from the third party which he was never required to turn over to the insured. Comparable problems would be encountered if the third party successfully defended the first suit by the insurer.

Affirmed.